and we call the next case please mr. Harris May it please the court, counsel. Brendan Harris representing Gerald Edwards, the defendant appellant in this case. We raised three issues in our direct appeal. The first issue was whether the state failed to prove beyond a reasonable doubt that the defendant had the specific intent to kill each individual that he was in fact convicted of killing. The second issue is whether the trial court erred in refusing to give lesser included jury instructions. There were two lesser included jury instructions for the attempt murder which were reckless discharge of a firearm and aggravated assault and one proposed lesser included instruction to the home invasion and that was residential burglary. Our third argument was that our third issue was that the defendant received an excessive sentence. I would like to start with the second of the three arguments regarding the lesser included jury instructions and I would like to start that argument by quoting the trial court judge. Now this quote occurred at the end of the formal conference on jury instructions. It's in my brief page 36 to 37 and I would quote I think one of the easiest ways for a court to be reversed and for the case to be tried again is to not give lesser included offenses in view of the facts and offenses for which a jury could reasonably conclude that the defendant was guilty of the lesser included rather than the charge offense. So I'm going to err on the side of caution and give the instruction for aggravated discharge of a firearm. I'm also going to give it for aggravated assault and reckless discharge of a firearm. The trial judge later goes on to say, I'll quote again, it fits the facts. A reasonable jury could conclude that's what he did. The state can certainly argue that he did both the home burglary. If they don't believe that he threatened the imminent use of force, but they could still find that he went in there with an intent to commit a felony, which would be the unlawful restraint. Well, when we're talking, usually you see this in that lesser included with burglary and with respect to, say, a theft, right? That's what most cases talk about. Then burglary is entry with intent to commit a theft or a felony, right? And so then they say, well, if the jury could conclude that he developed the intent to steal after he got in, then they could find him guilty of theft but not burglary, right? Sure. Okay. Now let's talk about home invasion. And your argument seems to be that because he formed the intent to commit an unlawful restraint before he went in, that he could be found guilty of burglary. And I suppose he could be convicted of burglary based on that. But that doesn't make him not guilty of home invasion, does it? In other words, when he formed the intent to enter, to go in and commit these acts that he committed in the home invasion is irrelevant to whether he's guilty of the home invasion. It's what he did when he was in there, right? I would somewhat disagree, Your Honor, in that he went in there with the intent to commit an unlawful restraint. So he's guilty of burglary. But that's not enough. You've got to show he's also not guilty of home invasion to get a lesser included. Excuse me. Yes. It should have come down to a factual determination by the jury whether or not the defendant threatened the imminent use of force on the other occupant in that apartment. There was conflicting testimony about whether or not there were threats made to, and her name was Julie, Julie Stratt, in the apartment. There's conflicting testimony from Julie, from the audio conversations that the defendant and numerous law enforcement personnel had throughout the course of this eight, nine hours. In fact, it wasn't until later on that Julie, the alleged victim here of the home invasion, residential burglary, depending on how you look at it, that she later, that she never during this incident stated, the defendant had a gun to my head and threatened me. That this was brought up later on. So it's unclear whether the jury would sort of automatically find that there was, in fact, a threatened imminent use of force or not. So if there was no threat of force, then the defendant could have been found guilty of residential burglary, but not home invasion. You don't think all that shooting would indicate a threat of force? Not on the individual inside. The only alleged victim we'd look to in that analysis would be the individual inside the apartment. While it's certainly reasonable to assume that people outside the apartment were contemplating, you know, perhaps getting hit by a bullet, the whole focus of this eight to nine hour incident were the law enforcement making sure that Julie, the woman in the apartment, was okay, that she was unharmed. Immediately, you know, just five minutes into this audio recording, he states, I'm not going to hurt Julie. I'm not going to hurt anybody. If you're in a building, shooting out of the building at the police, you think it ought to occur to a reasonable person that the police might shoot back? And if they do, anybody else in that building is in harm's way? Well, if you only look at the facts of this case, there were no shots into the building. I think a large reason for that might have been that Julie was also in the apartment and that, you know, the law enforcement didn't want to shoot her accidentally or something, but I think that also speaks to the fact that the law enforcement didn't seriously believe during the whole course of this that the defendant was trying to kill them. I think that speaks, you know, if all of the officers outside were thinking, oh, he's shooting at me with the intent to kill me, that their response wouldn't have just been to sort of sit back, let's make sure the victim's state of mind is irrelevant to a charge of attempted murder, isn't it? Yes. So to what the police were thinking isn't much help. Well, I feel like it speaks to their actions and how they viewed the situation that, I mean, there was continuous audio recorded conversations. This whole time the defendant was saying, I'm not going to shoot the officers. I'm not shooting at them. The only person that's going to get hurt here is me. I'm not going to shoot any officers. I'm not going to hurt Julie. I think that, you know, sort of in a backwards way goes back to the defendant's state of mind. If the officers don't perceive a imminent threat that they are, that the defendant's trying to shoot and kill them, then they're not going to view that situation in the same way either. Getting back to Justice Schmidt's example of theft versus burglary, it wasn't a request for a lesser included instruction on burglary, it was residential burglary. Yes. And residential burglary requires the state to prove that the building burglarized was the dwelling place of another. Isn't that element different from home invasion? Home invasion occurs when you know somebody to be in the home. You don't have to prove that it's a dwelling place. I don't believe it changes the analysis of this case. And as a further point I would like to make is it's not a dispositive issue whether or not those elements are the same either. Illinois follows the charging instrument approach and not the statutory elements approach. I feel like maybe you were alluding to comparing the different elements and our argument is that How can a charging instrument charge residential burglary without alleging it was a dwelling place of another? Well, that point I feel was obvious. That point was never in contention. Julie was in the apartment and it was her dwelling place. Both of those things can occur. They can both be true. But even if they're not, that does not preclude the lesser included offense instruction to begin with. I understand your point. I'm not sure I disagree, but I agree. Okay. But I guess my question deals with that, but isn't there, because the residential burglary requires that element of proof that you don't have to have for home invasion, it can't legally be considered a lesser included offense? I would disagree with that characterization under the charging instrument approach, which is the approach that should have been used by the trial judge. And it's clear that the trial judge did initially use that approach. When he says it fits the facts, a reasonable jury could conclude that's what The judge then changed his mind and said that there was a recess, a break for lunch, and then the judge on his own reconsidered and said, you know what, I'm going to not give those other instructions because the elements are not all the same. So he changed not only the way that the approach that he used, which our Washington, all of those cases use the charging instrument approach. And reading those cases, I feel like it's clear that that is the approach that should have been used. So even if the elements aren't exactly the same, it doesn't really matter. All that there needs to be under the charging instrument approach is you look at the facts alleged in the charging instrument, so in the indictment, and if there is a broad outline or if there is a description of the lesser included offense, then that can be, if the language in there broadly outlines the lesser included, that's good enough. Not all the elements have to be the same. All right. But you're leaving something out, and that is for when you're looking for a jury instruction like this, it also has to be that the judge concludes that a reasonable jury could find the defendant guilty of the lesser included and not the more serious offense. In other words, it's not like where they charge you with all these crimes. It's like, well, I'm guilty of this, not this. Like the theft burglary thing. Well, the jury could find that he didn't form the intent until after he went out of the building. But in this case, you seem to hang your hat on the fact that he formed his intent to commit this unlawful restraint before he entered the building, and therefore, while that may very well make him guilty of burglary, it does not make him not guilty of home invasion, unlike the timing of the intent on a theft burglary analysis. See what I'm saying? In other words, it's not enough that it might be a lesser included offense for some purposes, or that he could be charged and actually convicted of both, because they're actually separate crimes. But how does when he formed his intent, as you argue, negate his guilt of home invasion? I also don't think it's dispositive when he formed his intent. It wasn't, well, it's our argument that he formed his intent before entering that building, but that that intent continued for the duration of the time that he unlawfully restrained her, you know, for eight, nine hours. I mean, it's clear that she tried to leave. Which is a home invasion, right? It could be a home invasion. The question of whether or not it's a home invasion, you know, it depends upon whether there is imminent use of threat of forcing it, and I don't feel like that's a given in this case. Well, there's an unlawful restraint. In other words, if I say to you, hey, walk in and say, would you sit there? And you say, yeah, sure. Then I'm not implicit in unlawful restraint. Is he restraining somebody against their will by some type of implicit use of force? Otherwise, if a person's free to get up and walk away, and they have no reason to believe that you will cause them harm if they walk away, there is no unlawful restraint. Right. I mean, just implicit in the charge, in the concept, is that the person is being restrained against their will. How do you restrain somebody against their will? By either an actual or implicit or threat of use of force. We would argue that there would be other ways to unlawfully restrain somebody without the threatened imminent use of force. Give me an example. Well, you could threaten non-imminent use of force. That alone would not make it a home invasion anymore. You mean, if you leave, I'll track you down next week? Sure. For the sake of this argument, yes. My point is, there are occasions where he could be found not guilty of home invasion and guilty of residential burglary. Maybe locking the door and not having access to a key. There's no force there, but it's certainly confining and restraining somebody. So then, after the first prong here for the charging instrument approach, whether or not the charging instrument broadly outlines the lesser included, then the question is, is there any evidence that, if believed by the jury, would support giving the lesser included jury instruction? And we would argue that there was a ton of evidence that, if believed by the jury, did not elevate his actions to attempt murder. He was shooting through closed blinds, through floors, through a skylight that was all dirty and icy and fogged up. I mean, he made his intentions clear from the very beginning that he was not going to hurt anybody besides himself, that he was not going to shoot at officers. He said that at least a dozen times. How about, I see you, mother blinker, and then pop three shots through the sky, is that good? That testimony, we do not believe, was credible whatsoever. Most of the testimony said, I hear you and not that I see you. We feel like there is a distinction that can be made there. Regardless, the evidence proved that neither Julie nor the defendant could actually see out of the skylight. People on the roof looking in, they couldn't see anything in there. The testimony is quite clear on that. So if there's any evidence that could support that, that instruction has to be given. Counsel's time. Thank you. Yes. Mr. Gnidove. May it please the Court, Counsel. Well, with respect to include offenses, in my understanding of the law, is the fact that the jury has to be able to find, as Your Honor has pointed out, has to find the defendant not guilty of the charged offense, but guilty of the lesser. What complicates things in this case is the fact, a couple things. Number one, the way I like to analyze this a little bit, which may be kind of backwards, let's assume for the sake of argument that in this case, the jury was instructed on residential burglary. And what would happen if the jury convicted him, not only of the home invasion, but the residential burglary? What would be the argument here? Could that conviction stand? Well, under the right scenario, it could. But if it's given as a lesser included in this situation, oh, wait a minute. You've got to instruct the jury it's one or the other. They don't get the opportunity to do both. No, no, I understand. But my point is this. There was an old Illinois Supreme Court case in which the exact scenario happened. In the sense that, I forget what the charge was, but the defendant received, as in lesser included offense instruction, a lesser crime. The defendant was convicted. When it came time for sentencing, the state said, he's convicted. You've got to give him a sentence. And what happened was, he was sentenced on both. Because they found that while it was a lesser offense, it was not necessarily included. And what the Supreme Court did is, the Supreme Court reversed that lesser conviction because it wasn't included. Because it's an uncharged offense. So, when I look at it in this fashion, when I look at it in this particular case here, if he had been, would he have been able to have been sentenced on the residential burglary? And obviously not. Why not? While it is indeed a lesser offense, because it's obviously a lesser class felony, was it included? And what we have here is exactly what the state's attorney argued to the trial judge. Your Honor, while his conduct, from the time he entered until eight hours later, while his conduct may involve any number of offenses that I could have charged, I didn't charge that. And so, what we have here is, we have a classic situation. We have actually more than one act. We do have, I think technically speaking, probably do have a residential burglary, potentially. But then, that doesn't make it an included offense of the home invasion. Because, with respect to the residential burglary, the residential burglary is what was his intent at the time he entered, not what he did once he was inside the apartment. What he did inside the apartment was an entirely separate act, totally separate. So, basically, what is there about the home invasion that the jury, if they decided not to convict him of that, that would have led them to convict on the residential burglary? There's no issue of disputed fact on the home invasion. He's either guilty of that offense, or he's not guilty based on the conduct and based on what was alleged. Period. End of conversation. It's a lot like Cramer. In Cramer, we have the defendant charged with theft of a car. What the defendant wanted, he wanted joyriding instruction. Lesser offense. Supreme Court says, no, you're not entitled to that, because there's no question of disputed fact in the theft that's not covered by the joyriding statute. Same thing here. There's absolutely nothing here of any nature with respect to the home invasion. The case you were just talking about, what year was that? Cramer? I honestly don't remember. That was 1987. I did the case. It was 1987. Well, I mean, there's no question. You read these cases, you can get whiplash. But under the charging instrument approach, which they seem to have adopted, it's different than a one-act, one-crime analysis. That's correct. So, gee, could the jury give the guy a break? Could they just find he's a theft? But what I'm having trouble here with is, how does this fellow's former intent have anything to do with whether he's guilty of home invasion? And to get the lesser included, the jury has to be able to find him guilty of the lesser, but not the there's something about the facts that allow him to be included, convicted of the lesser, but not the more serious charge. That's correct. And that's where I'm kind of sort of going with the question of disputed fact. If there was some disputed fact between the two that was similar, that the jury could say, well, question about this, and therefore, because this included facts, which is lesser, we can find him guilty of that. But in a situation where he's either guilty of what he did or not guilty, then that, I think, answers, in particular, answers your particular question. Because what we come down to is, is this is a situation where what was his intent at the time he entered? Now, counsel likes to take and argue that his intent was to commit an unlawful restraint, aggravated unlawful restraint. That, I think, is shown by the fact that afterwards, if you take a look at what his statement was, his statement was, I went in there simply to take and kill myself in front of him. That would not necessarily have taken an aggravated unlawful restraint. He could have walked in, let the kids go, put the gun to his head and shot himself. That would not be an unlawful restraint. He would have accomplished his goal. Well, his intent at the time he entered was not to commit an aggravated unlawful restraint. And so, what felony did he contemplate? What was his intent at the time he entered? It certainly wasn't to commit a felony, because as far as I'm aware, committing suicide in front of someone is not a felony. So, I don't even see where residential burglary is even a possibility here. This is all based on simply what eventually progressed into a police standoff. Because the kids were out, and in fact, the one son had called 911 before even being let go, as soon as he heard the breaking. So, basically, I don't think that in this case that residential burglary is even possible, one of the facts of this case. This is all based on what happened afterwards. And so, again, if you take a look at included offenses, while indeed residential burglary here would have been a lesser offense, it is not included. And so, therefore, you don't have to worry about whether or not it's in the broad outline of the charge or anything like that, because we simply don't have this offense at all. I have a really dumb question. There are eight counts of murder here. And the lesser included offense of aggravated or reckless discharge of a firearm was requested on all eight counts. So, if there's a jury instruction error, we only remand on the two murder convictions, or do we remand for a new trial on all eight counts? Because the trial judge might have done the defendant a favor here, in that the jury found him not guilty of the attempt to murder, but could have easily found him guilty of the reckless discharge of the firearm of the officers that weren't on the roof, or weren't on the mezzanine of the theater. So, I don't know the answer to that. I hate to do this, but could you ask that again? Because there were eight of the 12 counts, there were eight attempts of murder. Right, and the jury acquitted him of six. Right, and what the jury did is, the jury simply convicted those officers where there was a direct point shoot. Right. Okay. Now, I got you so far, Doc. Can you kind of take and help me out with... So, what do we do? Let's say, as to the two attempt murders that were returned as guilty verdicts, the defendant's claiming there's an error in instructions, and he deserves a new trial. Does he get a new trial on all eight attempt murders? Do we give him a new trial and start all over? Because he didn't just request... Well, the thing about it is, if you did that, they would not be able to take a retry on the attempt murders. Because if there has been an acquittal by the finding of the conviction on the lesser is obviously an acquittal of the greater. Thank you for answering my question. Thank you. But that's only if reckless discharge is indeed an included offense on those. And, obviously, how you can take and point a gun at police, how you know police are out there, how you can be shooting at them, how you can make comments that you know you're shooting at police and claim it is reckless is beyond me, quite honestly. The definition, obviously, of the mental state of reckless is a conscious disregard. I think of conscious disregard if you're handling a weapon and you don't know if it's loaded or not, and you pull the trigger and it discharges and you hit somebody, that would be reckless. It's a conscious disregard of a known risk. You didn't check to see if the gun was loaded. Here, I mean, there was a deliberate act. He was engaged in specific conduct, pointing his gun at police, shooting. He knows he was shooting at people, specifically people, specifically police. How that can possibly say that that's reckless discharge or aggravated assault is beyond me. I think that that clearly, unequivocally indicates a specific intent. It is a direct intent directed at the officers. I think the trial judge did the right thing by reversing himself. Because I think if he had done otherwise, I think he really misapplies the law of include offense instructions. So we think that under the facts of this case and under the case law itself, that the trial judge did the correct thing and that the defendant's convictions should all be affirmed as imposed. If the court has any other questions about any of the other issues,  Thank you, Your Honor. Mr. Harris for rebuttal. I would like to address the recent comment that was just made about that this was a direct point and shoot. It absolutely was not. The evidence does not, it simply does not show that. The defendant never shot directly at any police officers. It was an issue that I addressed in my reply brief where there was repeated characterizations of the defendant shooting directly at police. Well, wouldn't that have been a jury question? From the evidence, would the jury have to decide that, whether it was shooting directly at? It should have been a question for the jury, and the jury should have had another option of reckless discharge of a firearm and aggravated assault. There's a few different issues intertwined here. One is, was he shooting directly at police or in the general direction, in the direction of police? Well, isn't reckless, I'm thinking more, you know, the guy goes out and he's not shooting in anybody's direction, but he shoots a gun up into the air in a populated area. And, of course, what goes up must come down. And isn't that more reckless as a point where you're shooting? I don't think if I shoot a gun through this wall here, I would equate that with shooting the gun up in the air. I feel like they're both reckless. If you're shooting through any kind of medium that you cannot see through, you don't know where somebody is on the other side. You can't shoot at them. You can shoot maybe in their direction, but it's going to be reckless. It's going to endanger their bodily safety. You're going to discharge a firearm recklessly. But in no way does that also rise to, with the specific intent, to kill that person. Even if you know there are, why don't you kind of presume to intend the natural consequences of your actions? Sure. And if you know police are on the other side of that wall and you decide to shoot through it, and then can you say, I didn't mean to hurt anybody? Absolutely. And I think all of the other evidence is consistent with the fact that the defendant did not intend to shoot any officers. He did not intend to kill any officers. But the jury rejected that contention because they had to consider it with respect to 8 different categories of victims based on the location of the victims. And they obviously carefully considered intent because they acquitted on 6 of the 8 charges, finding there's no specific intent to target those individuals. And for 5 of those attempt murder counts, the jury concluded that it was aggravated discharge of a firearm. The trial court judge gave the aggravated discharge of a firearm instruction here. And the jury agreed that it was, in fact, aggravated discharge of a firearm for 5 of those 8 offenses. So just because the jury found him guilty of 2 attempt murders, I don't believe that necessarily shows a thoughtful and thorough consideration, especially when there should have been a 3rd and 4th option presented to that jury of reckless discharge and of aggravated assault. Let me ask you one other question about that, because we're talking about the 2 attempt murder convictions. Elyse, with respect to that, now the jury obviously had a chance to do aggravated discharge, and they chose that. And they chose murder, attempt murder over aggravated discharge. Do you think it's fair to say that it's fair to include those other 2 lesser-included instructions that were even lesser than aggravated discharge or if error, harmless error, as for those 2? Because if they found him guilty of attempt murder as opposed to aggravated discharge, do you think there's any chance that jury would have found him guilty of reckless discharge or aggravated assault? Absolutely. I mean, reckless discharge, it's discharging a weapon in a reckless manner to endanger one's bodily safety. That is... I mean, you can be reckless with something... That's not necessarily a less serious offense. Well, I get that, but my point is the fact the jury had a chance to either attempt murder or aggravated discharge. So they had a chance to cut the guy some slack, but in 2 cases, they convicted him of attempted murder. So with respect to those 2 convictions, do you think the result would have been any different had those other lesser-included instructions been there? Yes, I believe that the jury would have found or may have found him guilty of 2 counts of reckless discharge of a firearm. I believe that all of the evidence with him, his location where he was at when he was shooting outside, just the different areas that he was shooting, he never had a clear view of what he was shooting at. He never had... He was shooting through closed blinds. He was shooting through a door, a wooden door. I feel like that can be better characterized as reckless conduct as opposed to knowing or intentional conduct, which is required for aggravated discharge of a firearm. The mental state for reckless discharge is just reckless, but it's elevated for that of aggravated discharge. It's got to be intentionally or knowing shooting at or in the direction of police. That's one minute. Well, the police, for obvious reasons, weren't standing right in front of the windows, right? That is correct. That makes sense to you. The policemen weren't standing right in front of the window while this guy's in there shooting, so where are they? They're on the other side of these walls somewhere. He can't be certain, but he's shooting through those walls. No, they're not in front of the windows. A jury could consider that and decide that he's trying to shoot a policeman. Also, these weren't random shots. There were 14 shots towards the front of the theater, all within a certain... His aim was certainly in the same area, and if he was reckless or not thinking about it, maybe the shots would have been a little less numerous or more splattered in where they landed. I would respond to that by stating that they were quite spread out. I think it's clear from all the evidence here that if the defendant intended to kill any police officers, they would be dead police officers. I hate to put it in that term, but I feel like that's obvious when looking at all the evidence about his location where he was shooting. He had so many opportunities to shoot police officers, so many, and he didn't. He didn't shoot anybody. He said at the very beginning of this, nobody's going to get hurt besides me. I'm not going to shoot any officers, and he was true to his word. Nobody got shot, and nobody got hurt. Thank you. Thank you, Mr. Harris. Mr. Genetovic, thank you also. This matter will be taken under advisement. Written disposition will be issued, and right now the court will be in a brief recess.